UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>PARK 54 RESTAURANT GROUP LLC,<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br>Case No. |

**DEBTOR'S EMERGENCY VERIFIED MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND TO PAY ADEQUATE PROTECTION**
[Emergency Determination Requested]

Debtor Park 54 Restaurant Group LLC (the "Debtor") hereby moves this Court for entry of an order, pursuant to Sections 361 and 363(c)(2) of the Bankruptcy Code, and MLBR 4001-2, authorizing the use of the cash collateral of creditors WebBank and Dorchester Bay Neighborhood Loan Fund (the "Secured Creditors"). In addition, the Debtor seeks authority to make adequate protection payments to WebBank and Dorchester Bay Neighborhood Business Loan Fund. **As set forth below, the Debtor will need to pay certain ongoing expenses on a daily basis, including payroll, by October 23, 2025, and will need the release of funds restrained by the secured creditors, as well as its receivables going forward. Accordingly, the Debtor requests, pursuant to MLBR 9013-1(g), emergency determination of this Motion.** In support of this Motion, the Debtor respectfully represents:

I.    **Introduction**

1. On October 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its businesses and financial affairs as a debtor-in-possession.

## II. Background

3. The Debtor, founded in 2021 by Tasha Hull, owns and operates a restaurant in Hyde Park, Massachusetts. Park 54 is inspired by the life and service of the men who served during the Civil War in the 54th Regiment - a volunteer infantry comprised of free Black American male soldiers. The regiment was established in Readville, now known as Hyde Park.

4. The Debtor has significant obligations to the Massachusetts DOR for unpaid meals and withholding taxes. Recently, the Debtor looked to merchant cash advances to fund its business, including the repayment of loan obligations to a former owner of the business. As a result, the DOR recently placed a hold on Debtor's operating accounts, and the MCA lenders froze the payment of receipts from certain credit card processors.

5. The Debtor believes that by reducing and restructuring its MCA debt, and by paying its back tax obligations over a five-year plan period, it will be able to return to a positive cash flow and make a reasonable distribution to unsecured creditors.

## III. The Debtor's Creditors

**Secured Debt**

6. **325 LLC.** The Debtor is indebted to 325 LLC in the current amount of $427,500.00, pursuant to a December 2021 Promissory Note and Pledge Agreement. The obligation is secured by the Debtor's City of Boston All Alcohol Liquor License (the "Liquor License"), as evidenced by a UCC-1 financing statement filed on April 11, 2022. The Debtor asserts that the Liquor License has a current fair market value of approximately $450,000.00. Accordingly, the Debtor asserts that 325 LLC is fully secured.

7. **WebBank.** The Debtor is indebted to WebBank in the current amount of $107,813.00 pursuant to a merchant cash advance agreement. The WebBank obligation is

secured by a first-place lien on the Debtor's credit card receivables collected through the Toast point of sale application, as evidenced by a UCC-1 financing statements filed on June 22, 2023, July 18, 2023, April 10, 2024, and September 26, 2024.  The Debtor asserts that the current value of the receivables securing the WebBank debt is approximately $46,000.00.

8.  **Dorchester Bay Neighborhood Business Loan Fund**.  The Debtor is indebted to Dorchester Bay Neighborhood Business Loan Fund ("Dorchester") in the current amount of $58,635.00.  The Dorchester obligation is secured by a lien on all assets of the Debtor as evidenced by a UCC-1 financing statement filed on October 12, 2023.  The Dorchester lien is junior to: (i) the 325 LLC lien on the Liquor License; and (ii) the WebBank lien on the Debtor's receivables.  Dorchester has a first-place lien on all remaining assets of the Debtor.  The Debtor asserts that, after accounting for the 325 LLC and WebBank secured debt, the current fair market value of all remaining assets, including equipment and inventory, securing the Dorchester debt is approximately $70,000, making Dorchester Fully Secured.

9.  **Square Advance**.  The Debtor is indebted to Square Advance ("Square") in the current amount of $89,900.00 pursuant to a merchant cash advance agreement.  The Square obligation is secured by a lien on all assets of the Debtor as evidenced, on information and belief[1], by a UCC-1 financing statement dated January 31, 2025. The Square lien is junior to: (i) the 325 LLC lien on the Liquor License; (ii) the WebBank lien on the Debtor's receivables; and (iii) the Dorchester first-place lien on all of the Debtor's remaining assets.  The Debtor asserts that, after accounting for the 325 LLC, WebBank and Dorchester secured debt, the current fair market value of all remaining assets securing the Square debt is approximately $12,000.00.  Square is undersecured.

---

[1] The UCC-1 is filed by Corporation Service Company, as Representative.

10. **FundPro Solutions.** The Debtor is indebted to FundPro Solutions ("FundPro") in the current amount of $195,305.00 pursuant to a merchant cash advance agreement. The obligation is secured by a fourth-place lien on the Debtor's credit card receivables, as evidenced, on information and belief[2], by a UCC-1 financing statement filed on February 19, 2025. The Debtor asserts that after accounting for senior liens, FundPro is wholly unsecured.

11. **LG Funding**. The Debtor is indebted to LG Funding ("LG") in the current amount of $125,950.00 pursuant to a merchant cash advance agreement. The obligation is secured by a fifth-place lien on the Debtor's credit card receivables, as evidenced, on information and belief[3], by a UCC-1 financing statement filed on February 20, 2025. The Debtor asserts that after accounting for senior liens, LG is wholly unsecured. **Currently, LG Funding has placed a restraint on over $34,000.00 currently held by the Toast POS application. The Debtor hereby requests that LG be required to immediately release its restraint on all funds currently held by any POS application, including Toast.**

12. **Ocean Funding Corp**. The Debtor is indebted to Ocean Funding Corp. ("Ocean Funding") in the current amount of $44,463.00 pursuant to a merchant cash advance agreement. The obligation is secured by a sixth-place lien on the Debtor's credit card receivables as evidenced by a UCC-1 financing statement filed on February 28, 2025. The Debtor asserts that after accounting for senior liens, Ocean Funding is wholly unsecured.

13. **CFG Merchant Solutions LLC**. The Debtor is indebted to CFG Merchant Solutions LLC ("CFG") in the current amount of $91,570.00 pursuant to a merchant cash advance agreement. The obligation is secured by a seventh-place lien on the Debtor's credit card

---

[2] The UCC-1 is filed by CT Corporation System, as Representative.
[3] The UCC-1 is filed by VState Filings, as Representative.

receivables as evidenced by a UCC-1 financing statement filed on April 29, 2025. The Debtor asserts that after accounting for senior liens, CFG is wholly unsecured.

14.     **Union Funding Source**. The Debtor is indebted to Union Funding Source ("Union Funding") in the current amount of $56,062.00 pursuant to a merchant cash advance agreement. The obligation is secured by an eighth-place lien on the Debtor's credit card receivables, as evidenced, on information and belief[4], by a UCC-1 financing statement filed on April 30, 2025. The Debtor asserts that after accounting for senior liens, Union Funding is wholly unsecured.

15.     **Door Dash Capital**. The Debtor is indebted to Door Dash Capital ("Door Dash") in the amount of $19,173.00 pursuant to a merchant cash advance agreement. Upon information and belief, no UCC has been filed and the Door Dash debt is wholly unsecured. **However, Door Dash has placed a restraint on approximately $12,000.00 currently held by Shift4 (POS application). The Debtor hereby requests that Door Dash be required to immediately release its restraint on all funds currently held by any POS application, including Shift4.**

**Priority Tax Debt**

16.     The Debtor is obligated to the Massachusetts Department of Revenue in the amount of approximately $290,000.00 for unpaid meals and withholding taxes, and to the Massachusetts Department of Unemployment Assistance in the amount of $55,000.00 for unpaid unemployment taxes.

**General Unsecured Debt**

17.     The Debtor has approximately $275,000.00 in general unsecured debt, comprised primarily of vendors.

---

[4] The UCC-1 is filed by CT Corporation System, as Representative.

## IV.   Basis for Relief

18.   Section 363(c)(2) of the Code provides that, absent consent by the secured party, "The trustee (here, the debtor in possession) may not use, sell or lease cash collateral under paragraph (1) of this subsection unless: (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Section 363(e) of the Code requires that the court condition the use of cash collateral as is necessary to provide adequate protection to the secured creditor.

19.   Section 361 of the Code provides that adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under Section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." *11 U.S.C. §§ 361(1), (2), (3)*.

20.   What constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The purpose is to protect a secured creditor from diminution in value of its interest in the collateral during the period of use by the Debtors. *See In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

21. In the present case, the Debtor asserts that any cash collateral used by the Debtor will be used solely to maintain operations and generate at least an equal amount of cash collateral. However, in addition, the Debtor also proposes to grant the following as additional adequate protection:

    a. The Debtor shall grant to each of the Secured Creditors continuing replacement liens and security interests to the same validity, extent and priority that each would have had in the absence of the bankruptcy filing;

    b. The Debtor shall remain within its Budget, attached hereto as Exhibit A, within an overall margin of 10 percent; and,

    c. The Debtor shall, by the 15th day of each month, beginning in November of 2025, make monthly adequate protection payments to WebBank in the amount of $892.00 and Dorchester in the amount of $250.00. In each case, the application of the adequate protection payments to principal or interest shall be reserved until further order of this Court.

The foregoing proposal more than adequately protects the Secured Creditors.

## V.    Notice

22. Copies of this Motion, together with copies of the proposed Order hereon, have been furnished by ECF, email or fax transmission to: (a) the Office of the United States Trustee for this district; (b) if previously appointed, the Subchapter V Trustee; (c) the Debtor's 20 largest unsecured creditors as reflected in the list filed by the Debtor pursuant to Fed. R. Bankr. P. 1007(d); (d) the Internal Revenue Service; (e) the Massachusetts Department of Revenue; (f) the Massachusetts Department of Unemployment Assistance; and (g) the Debtor's Secured Creditors

(collectively the "Notice Parties"). The Debtor submits that such service constitutes sufficient notice of this Motion, the proposed Order hereon and the relief sought hereunder in the particular circumstances.

## VI. Conclusion

WHEREFORE, the Debtor respectfully requests that this Court enter an order, in a form to be provided to the Court: (a) authorizing the Debtor to use cash collateral in accordance with the Budget; (b) ordering LG Funding and Toast, and Door Dash and Shift4, respectively to immediately release all restraint on the Debtor's receivables; and (c) granting such other and further relief as this Court may deem just and proper.

Respectfully submitted this 10th day of October 2025.

PARK 54 RESTAURANT GROUP LLC,

By its attorneys,

*/s/ David B. Madoff*
David B. Madoff (BBO#552968)
Steffani M. Pelton (BBO#666470)
MADOFF & KHOURY LLP
124 Washington Street
Foxboro, MA 02035
(508) 543-0040
madoff@mandkllp.com

**Verification**

Tasha Hull, the Manager of the Debtor, hereby verifies that she has read the foregoing Verified Motion and that the factual allegations contained therein are true and accurate based on his personal knowledge.

Signed under the penalties of perjury this 10th day of October 2025.


*/s/ Tasha Hull*
Tasha Hull